UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KIARA DAWSON,

                            Plaintiff,

              -v.-

CORRECTIONS OFFICER ALIEF A. BEEBE,
CORRECTIONS OFFICER NANCY E. RIVERA,
and SUPERINTENDENT SEIVERIGHT W.
MILLER,

                            Defendants.

---

24 Civ. 1548 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Kiara Dawson ("Plaintiff" or "Dawson") brings this action against New York State Department of Corrections and Community Supervision ("DOCCS") Correction Officers Alief A. Beebe ("Beebe") and Nancy E. Rivera ("Rivera"), and DOCCS Superintendent Seiveright W. Miller ("Miller") (collectively, "Defendants"), alleging employment discrimination and retaliation by Defendants under federal, state, and local law in connection with her employment as a cook at the DOCCS Edgecombe Residential Treatment Facility in Manhattan ("Edgecombe").  Before the Court are two partial motions to dismiss certain claims in Plaintiff's Complaint — one brought by Defendants Rivera and Miller, and the other brought by Defendant Beebe — pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  For the reasons that follow, the Court grants in part and denies in part the partial motion to dismiss brought by Defendants Rivera and Miller, and grants in part and denies in part the partial motion to dismiss brought by Defendant Beebe.

## BACKGROUND[1]

### A.   Factual Background

Plaintiff Kiara Dawson is a woman who is employed by DOCCS as a cook at the Edgecombe Residential Treatment Facility in Manhattan.  (Compl. ¶¶ 7, 14a, 58).  She alleges that, during an approximately two-month period in 2023, she was sexually harassed by her supervisor, Alief A. Beebe, the Head Cook in Edgecombe's kitchen.  (Id. ¶¶ 15a; 13-39).

Plaintiff alleges that Defendant Beebe began by sending her a series of unwelcome lewd messages.  After Defendant Beebe, "under the guise of friendship, explained to [Plaintiff] that the staff have each other's phone numbers and like to send funny memes" to each other (Compl. ¶ 18a), Plaintiff gave her phone number to Beebe, who then followed her on Instagram (id. ¶¶ 19a-20a).  On June 24, 2023, Defendant Beebe sent Plaintiff a meme about oral sex, prompting Plaintiff to respond that he should "tell [his] wife that."  (Id.

---

1       This Opinion draws its facts from the Complaint ("Compl." (Dkt. #1)), the well-pleaded allegations of which are taken as true for purposes of this Opinion.  See Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).  The Court also relies, as appropriate, on the exhibits attached to the Complaint ("Compl., Ex. [ ]" (Dkt. #1)), each of which is incorporated by reference in the Complaint.  See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (explaining that on a motion to dismiss, courts may consider documents incorporated by reference and documents integral to a complaint).  Because the Complaint has numbered paragraphs 13 through 20 twice (see Compl. 3-4), the Court refers to the first paragraphs 13 through 20 as "13a" through "20a," and to the subsequent paragraphs "13" through "20" as such.

For ease of reference, the Court refers to Defendants Rivera and Miller's memorandum of law in support of their motion to dismiss as "Rivera & Miller Br." (Dkt. #29); to Defendant Beebe's memorandum of law in support of his motion to dismiss as "Beebe Br." (Dkt. #31); to Plaintiff's memorandum of law in opposition to both motions to dismiss as "Pl. Opp." (Dkt. #35); to Defendants Rivera and Miller's reply memorandum of law in further support of their motion to dismiss as "Rivera & Miller Reply" (Dkt. #36); and to Defendant Beebe's reply memorandum of law in further support of his motion to dismiss as "Beebe Reply" (Dkt. #37).

¶¶ 13-14).  On another occasion, Defendant Beebe commented on a picture Plaintiff had posted, "Lemme suck on that bottom lip." (*Id.* ¶ 15).  And after Plaintiff expressly rejected yet another advance by Beebe, he responded that "[a] TRUE side bitch knows her role and play[s] it well." (*Id.* ¶¶ 16-18).

Plaintiff alleges that Defendant Beebe then escalated his misconduct by physically assaulting and harassing her over the course of several weeks.  On July 4, 2023, Defendant Beebe allegedly waited for Plaintiff to leave the bathroom, followed her, and then grabbed her buttocks.  (Compl. ¶¶ 19-24).  When Plaintiff loudly objected, Beebe "pleaded for [Plaintiff] to be quiet." (*Id.* ¶¶ 25-26).  On another day in July 2023, Plaintiff deliberately avoided Beebe, and as she left the building received a text message from him saying that he wanted to grab her buttocks again.  (*Id.* ¶¶ 27-28).  And sometime in July 2023, Plaintiff caught Beebe "repeatedly smelling the crotch area of [a pair of] sweatpants" she had brought as a change of clothes.  (*Id.* ¶¶ 29-30).  On or about August 1, 2023, Plaintiff alleges that Beebe followed Plaintiff "to the refrigerator, opened the door[,] and — after looking both ways to make sure there were no witnesses — assaulted [Plaintiff] by grabbing her by the neck from behind and wrapping his arm across her left arm and torso." (*Id.* ¶¶ 35-37).  Plaintiff managed to defend herself and push Beebe away, but her neck was "red" as a result.  (*Id.* ¶¶ 38-39).

Finally, Plaintiff alleges that Defendant Beebe implied a *quid pro quo* of Plaintiff's preferred work schedule for sexual favors.  On June 24, 2023, Plaintiff requested three days off surrounding the July 4 holiday.  (Compl.

¶ 31).  When Beebe declined to give Plaintiff the day off on July 3, Plaintiff renewed her request, and Beebe responded, "I told you what to do if you want the day.  If you don't do it, you don't want it."  (*Id.* ¶¶ 32-33).  Plaintiff refused. (*Id.* ¶ 34).

Plaintiff alleges that Defendant Rivera, among others, retaliated against her for complaining about Beebe.  On August 8, 2023, Plaintiff filed a formal written complaint about Beebe's misconduct.  (Compl. ¶ 40).  Thereafter, Rivera — Plaintiff's union representative[2] — allegedly "told [Plaintiff's] co-workers not to trust her" and told Plaintiff's supervisors "falsely[ ] that she was stealing time."  (*Id.* ¶¶ 42, 44).  Additionally, Rivera physically obstructed Plaintiff's pathway, "began asking male officers if [Plaintiff] had sexual intercourse with them," and referred to Plaintiff as a "rat" and a "snitch."  (*Id.* ¶¶ 43, 45-46).  This alleged campaign of retaliation culminated in one of Plaintiff's co-workers' placing a cartoon rat sticker on Plaintiff's November 2, 2023-November 15, 2023 timesheet, with Plaintiff's surname emblazoned on the rat's chest.  (*Id.* ¶ 47).

Plaintiff reported this alleged retaliatory conduct to Defendant Miller, the highest-ranking officer at Edgecombe.  (Compl. ¶¶ 10, 48).  However, Plaintiff alleges that Miller "refus[ed] to accept [her] complaints" because they were not in writing, and that he "exhibited a shocking indifference to [Plaintiff's]

---

[2]    Rivera maintains that she is an Office Assistant, and not a Correction Officer as Plaintiff alleges; the difference in title is immaterial to the Court's analysis.  (Rivera & Miller Br. 10).

complaints, telling her that, 'If you want to fit in here, you need to be quiet.'"
(*Id.* ¶¶ 49-50).

Plaintiff brings federal constitutional claims, and claims under New York state and local anti-discrimination laws — specifically, the New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. Law §§ 290 to 301, and the New York City Human Rights Law (the "NYCHRL"), N.Y.C. Admin. Code §§ 8-101 to 8-134 — in connection with these allegations. (Compl. ¶¶ 59-92).

## B.    Procedural Background

Plaintiff initiated this action by filing the Complaint — the operative pleading — on February 29, 2024. (Dkt. #1). After the Court granted two requests for additional time to answer or otherwise respond to the Complaint (Dkt. #10-11, 13-14), on May 28, 2024, Defendants Rivera and Miller filed a pre-motion letter seeking leave to file a partial motion to dismiss certain of Plaintiff's claims. (Dkt. #15). After the Court granted a brief extension request (Dkt. #16-17), Plaintiff filed a letter in opposition on June 7, 2024 (Dkt. #18). On June 13, 2024, the Court scheduled a pre-motion conference regarding this anticipated partial motion to dismiss for August 6, 2024. (Dkt. #19). Defendant Beebe then requested additional time to answer or otherwise respond to the Complaint, which request the Court granted on June 26, 2024. (Dkt. #20-21). On July 29, 2024, Beebe filed a letter requesting a pre-motion conference regarding an anticipated partial motion to dismiss certain of Plaintiff's claims. (Dkt. #24). The Court endorsed this letter to say that it would discuss Beebe's anticipated motion at the previously scheduled

conference concerning the other two Defendants' anticipated motion. (Dkt. #25).

On August 6, 2024, the Court held a pre-motion conference regarding these two partial motions to dismiss. (August 6, 2024 Minute Entry). Because Plaintiff indicated during this conference that she planned to amend the Complaint, the Court ordered that Plaintiff file her amended complaint by September 30, 2024, along with a proposed briefing schedule. (*Id.*). Plaintiff did not file an amended complaint. Instead, on October 2, 2024, Plaintiff filed a letter proposing a briefing schedule for the respective partial motions to dismiss (Dkt. #26), which letter the Court endorsed on October 3, 2024. (Dkt. #27).

On December 5, 2024, Defendants Rivera and Miller filed their partial motion to dismiss (Dkt. #28) and a memorandum of law in support thereof (Dkt. #29). On the same date, Defendant Beebe filed his partial motion to dismiss (Dkt. #30) and a memorandum of law in support thereof (Dkt. #31). After the Court granted a brief extension request (Dkt. #32-33), Plaintiff filed her memorandum of law in opposition to both partial motions to dismiss on March 3, 2025 (Dkt. #35). Defendants Rivera and Miller filed their reply memorandum on April 9, 2025 (Dkt. #36), and Defendant Beebe filed his reply memorandum on April 10, 2025 (Dkt. #37).

## DISCUSSION

### A.    Applicable Law

#### 1.    Federal Rule of Civil Procedure 12(b)(1)

Defendants seek dismissal under Rules 12(b)(1) and 12(b)(6) of the
Federal Rules of Civil Procedure, and so the Court considers the legal
standards for both.  A complaint may be dismissed for "lack of subject-matter
jurisdiction" pursuant to Federal Rule of Civil Procedure 12(b)(1).  "A 'case is
properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)
when the district court lacks the statutory or constitutional power to
adjudicate it.'"  *Nike, Inc.* v. *Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011)
(quoting *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

Challenges to subject matter jurisdiction under Rule 12(b)(1) can be
either facial or fact-based.  *Carter* v. *HealthPort Techs., LLC*, 822 F.3d 47, 56-57
(2d Cir. 2016); *see also Katz* v. *Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d
Cir. 2017).  A facial Rule 12(b)(1) motion is one "based solely on the allegations
of the complaint or the complaint and exhibits attached to it."  *Carter*, 822 F.3d
at 56.  A plaintiff opposing such a motion bears "no evidentiary burden," *id.*,
and the court's task is to determine whether the complaint and its exhibits
allege facts that "affirmatively and plausibly suggest" that the plaintiff has
standing to sue, *id.* (quoting *Amidax Trading Grp.* v. *S.W.I.F.T. SCRL*, 671 F.3d
140, 145 (2d Cir. 2011) (per curiam)).  In making that determination, the court
must accept the complaint's allegations as true "and draw[ ] all reasonable

inferences in favor of the plaintiff." *Id.* at 57 (quoting *Lunney* v. *United States*, 319 F.3d 550, 554 (2d Cir. 2003)).

"Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the Pleading." *Carter*, 822 F.3d at 57; *see also MMA Consultants 1, Inc.* v. *Republic of Peru*, 719 F. App'x 47, 49 (2d Cir. 2017) (summary order) (defining fact-based Rule 12(b)(1) motion as one where "the defendant puts forward evidence to challenge the factual contentions underlying the plaintiff's assertion of subject-matter jurisdiction"). "In opposition to such a motion, [the plaintiff] must come forward with evidence of their own to controvert that presented by the defendant, or may instead rely on the allegations in the[ir p]leading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing." *Katz*, 872 F.3d at 119 (second alteration in original) (internal quotation marks omitted). If a defendant supports its fact-based Rule 12(b)(1) motion with "material and controverted" "extrinsic evidence," a "district court will need to make findings of fact in aid of its decision as to" subject matter jurisdiction. *Carter*, 822 F.3d at 57.

## 2. Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), a court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they

plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff is entitled to relief if she alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge [a plaintiff's] claims across the line from conceivable to plausible." (internal quotations marks omitted) (citing *Twombly*, 550 U.S. at 570)).

That said, a court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation marks omitted); *see also Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted and alteration adopted) (quoting *Iqbal*, 556 U.S. at 678)). Moreover, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

On a motion to dismiss pursuant to Rule 12(b)(6), "[t]he Court may consider any written instrument attached to the [c]omplaint as an exhibit, any

statements or documents incorporated by reference in the [c]omplaint,
documents that are 'integral' to the [c]omplaint even if they are not
incorporated by reference, and matters of which judicial notice may be taken."
*Donoghue* v. *Gad*, No. 21 Civ. 7182 (KPF), 2022 WL 3156181, at *2 (S.D.N.Y.
Aug. 8, 2022) (citing *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d
Cir. 2002); *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016)).

## B.    Analysis

Certain of the claims in Plaintiff's seven-count Complaint are not
contested in Defendants' motions to dismiss; the Court will therefore not
address those claims.  Conversely, certain claims have been expressly or
implicitly abandoned by Plaintiff; the Court dismisses these claims with
prejudice.

To begin, Defendant Beebe does not seek to dismiss Count I (Fourteenth
Amendment) or Count II (deliberate indifference); he only seeks to dismiss
Counts III through VII (claims for, respectively, violation of the New York
Constitution; NYCHRL gender discrimination; NYSHRL gender discrimination;
NYCHRL retaliation; and NYSHRL retaliation).  (*See generally* Beebe Br.).
Defendants Rivera and Miller seek to dismiss all claims against Miller, and all
claims brought against Rivera (which are Counts I, IX, V, VI, and VII), except
for Count VI (NYCHRL retaliation).  (*See generally* Rivera & Miller Br.).

The scope of Defendants' partial motions to dismiss was further
narrowed by Plaintiff's express abandonment of certain claims.  Although
Plaintiff did not amend her Complaint, Plaintiff in her opposition brief states

that she "withdraws all claims against Defendant Miller except her deliberate indifference claim," and "also withdraws the following claims against Rivera: [i] the Section 1983 discrimination claims; [ii] gender discrimination and harassment claims under [the] NYCHRL; and [iii] gender discrimination claims under NYSHRL.  Finally, [Plaintiff] withdraws all New York State Constitution claims." (Pl. Opp. 1 n.1).  Defendants Rivera and Miller request that the Court dismiss these claims with prejudice.  (Rivera & Miller Reply 3).  Claims that are expressly withdrawn in an opposition to a motion to dismiss are considered to be abandoned, and courts have dismissed such claims with prejudice.  *See, e.g.*, *Jennings* v. *Hunt Cos.*, 367 F. Supp. 3d 66, 69-70 (S.D.N.Y. 2019) (dismissing with prejudice claims that plaintiff had expressly abandoned in his opposition brief); *see also Jingle Kids USA, LLC* v. *In Colour Cap. Inc.*, No. 22 Civ. 7089 (JHR), 2023 WL 6392725, at *2 (S.D.N.Y. Oct. 2, 2023) (collecting cases).  Accordingly, the Court dismisses these expressly abandoned claims with prejudice.

That leaves the Court to address in this Opinion Plaintiff's remaining claims of: (i) retaliation in violation of the Equal Protection Clause against Defendant Rivera (Count I); (ii) deliberate indifference under federal law against Defendant Miller (Count II); (iii) gender discrimination and harassment under the NYSHRL against Defendant Beebe (Count V); (iv) gender discrimination and harassment under the NYCHRL against Defendant Beebe (Count IV); (v) retaliation under the NYSHRL against Defendants Beebe and Rivera (Count

VII); and (vi) retaliation under the NYCHRL against Defendant Beebe (Count VI).  The Court addresses each claim in turn.

### 1. Plaintiff Has Adequately Pleaded a Section 1983 Retaliation Claim as to Defendant Rivera

Plaintiff brings a cause of action for deprivation of federal rights under 42 U.S.C. § 1983, specifically, that Defendants under color of state law deprived her of "the rights, privileges and immunities guaranteed to citizens of the United States by the Fourteenth Amendment[ ] to the Constitution of the United States of America, and [the] Equal Protection [C]lause, in violation of 42 U.S.C. § 1983."  (Compl. ¶¶ 62-64.  After withdrawing her "section 1983 discrimination claim" against Rivera (Pl. Opp. 1 n.1), Plaintiff in her opposition maintains that Defendants Rivera and Miller did not seek to dismiss her "Section 1983 retaliation claim" (*id.* at 4), which she admits "could have been set forth with greater clarity in the Section 1983 claim" of her Complaint (*id.* at 4 n.4).  The Court agrees, but notes that in fact Plaintiff does refer to "Defendant Rivera's retaliation" in the paragraph immediately preceding Count I under a section titled "The Constitutional Violations" (Compl. ¶ 61), and she alleges retaliatory conduct by Rivera in earlier paragraphs (*id.* ¶¶ 40-47).  Accordingly, the Court reads Plaintiff's Complaint to allege a claim of retaliation against Rivera in violation of the Equal Protection Clause, through the vehicle of § 1983.[3]

---

[3]    Defendants Rivera and Miller characterize this claim as "[a] newly pled First Amendment retaliation claim against Ms. Rivera."  (Rivera & Miller Reply 1).  But Plaintiff says nothing about the First Amendment, nor does her claim sound in the First Amendment.  (*Cf.* Compl. ¶¶ 40-47, 61-64).  Although Defendants Rivera and Miller

Section 1983 provides a cause of action against any

> person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State … , subjects,
> or causes to be subjected, any citizen of the United
> States or other person within the jurisdiction thereof to
> the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws[.]

42 U.S.C. § 1983. "To state a claim under [Section 1983], a plaintiff must allege both that: [i] a right secured by the Constitution or laws of the United States was violated, and [ii] the right was violated by a person acting under the color of state law." *Golian* v. *N.Y.C. Admin. For Child. Servs.*, 282 F. Supp. 3d 718, 727 (S.D.N.Y. 2017) (citing *West* v. *Atkins*, 487 U.S. 42, 48 (1988)).

"Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes* v. *James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City* v. *Tuttle*, 471 U.S. 808, 816 (1985)). Simply put, "there is no such thing as a standalone § 1983 claim untethered to a substantive right." *Boykin* v. *Westchester Cnty. Jail,* No. 22 Civ. 10513 (CS), 2024 WL 4252040, at *7

---

raise the specter of a "First Amendment" retaliation claim multiple times in their reply brief (Rivera & Miller Reply 1, 5, 6), they characterize "Plaintiff's First Amendment retaliation claim" as rising and falling according to "Plaintiff's NYSHRL retaliation claim" (*id.* at 6-7). In other words, Defendants Rivera and Miller call this a First Amendment claim but do not treat it as one. By contrast, and in line with a broad reading of the allegations in the Complaint, Plaintiff elaborates in her opposition brief that the retaliation claim she brings through § 1983 is one for retaliation in violation of her equal protection rights. (*See* Pl. Opp. 5-8). The Court analyzes it as such. The Court further notes that Defendants Rivera and Miller have not waived any argument in favor of dismissing the constitutional retaliation claim because they say that the same standard as a NYSHRL retaliation claim applies to a constitutional retaliation claim, and the Court agrees that, had Plaintiff more clearly alleged constitutional retaliation, Defendant Rivera "would clearly have moved to dismiss it as well." (Rivera & Miller Reply 6).

(S.D.N.Y. Sept. 20, 2024).  Therefore, to the extent Count I of Plaintiff's Complaint can be read to raise a standalone claim under Section 1983 (*see* Compl. ¶¶ 62-65), she cannot bring such a claim.

The Fourteenth Amendment to the United States Constitution provides that "[n]o state shall … deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  Under the Fourteenth Amendment, "public employees [have] the right to be 'free from discrimination.'"  *Vega* v. *Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) (quoting *Demoret* v. *Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006)).  "Consequently, public employees aggrieved by discrimination in the terms of their employment may bring suit under 42 U.S.C. § 1983 against any responsible persons acting under color of state law."  *Id.* (citing *Back* v. *Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122-23 (2d Cir. 2004)).  That said, "[a]n individual can be held liable under § 1983 'only if they are personally involved in the alleged deprivation.'"  *Miller-Sethi* v. *City Univ. of N.Y.*, No. 21 Civ. 8591 (JPO), 2023 WL 419277, at *9 (S.D.N.Y. Jan. 26, 2023) (quoting *Littlejohn* v. *City of New York*, 795 F.3d 297, 314 (2d Cir. 2015)).  Personal involvement may be shown through evidence of (i) direct participation in the constitutional violation; (ii) failure to remedy after being informed of a constitutional violation; (iii) creating or allowing the continuance of an unconstitutional policy or custom; (iv) grossly negligent supervision of subordinates who committed wrongful acts; or (v) deliberate indifference by failing to act on information indicating unconstitutional acts were occurring.

14

*Littlejohn*, 795 F.3d at 314; *accord Fay* v. *Barbera*, No. 24-3016-cv, 2025 WL 1554491, at *2 (2d Cir. June 2, 2025) (summary order).

Plaintiff alleges retaliation by Rivera in violation of Plaintiff's equal protection rights. (Compl. ¶¶ 40-47, 61-64). "[T]o establish a *prima facie* case of retaliation, a plaintiff must demonstrate that [i] [the plaintiff] engaged in protected activity, [ii] the defendant was aware of that activity, [iii] [the plaintiff] was subjected to a retaliatory action, or a series of retaliatory actions, that were materially adverse, and [iv] there was a causal connection between the protected activity and the materially adverse action or actions." *Carr* v. *N.Y.C. Transit Auth.*, 76 F.4th 172, 180 (2d Cir. 2023). Of note, however, these requirements are "relaxed" at the pleading stage. *Littlejohn*, 795 F.3d at 307. For a "retaliation claim based on an equal protection violation under § 1983 … to survive a … motion to dismiss, the plaintiff must plausibly allege that: [i] defendants acted under the color of state law, [and] [ii] defendants took adverse employment action against [her], [iii] because [s]he complained of or otherwise opposed discrimination." *Vega*, 801 F.3d at 91. Here, the Court finds that Plaintiff adequately pleads a retaliation claim against Defendant Rivera cognizable under § 1983.

As Defendant Rivera does not appear to contest that Plaintiff acted under color of state law, the Court begins its analysis with the question of whether Plaintiff plausibly alleges an adverse employment action. "[T]he elements of a retaliation claim based on an equal protection violation under § 1983 mirror those under Title VII [of the Civil Rights Act of 1964]," *Vega*, 801 F.3d at 91,

15

and therefore the Court cites authorities on retaliation claims under these statutes interchangeably. "In the context of retaliation, 'adverse employment action' is broader than it is in the context of discrimination." *Shultz* v. *Congregation Shearith Israel of City of N.Y.*, 867 F.3d 298, 309 (2d Cir. 2017) (citing *Hicks* v. *Baines*, 593 F.3d 159, 165 (2d Cir. 2010)). More specifically, "adverse employment action" is broader than it is in a hostile work environment claim, and accordingly a plaintiff need not allege that the adverse action "alter[ed] the terms and conditions of [her] employment," but rather only that "the retaliatory actions she was subjected to were materially adverse, meaning that the actions 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Carr*, 76 F.4th at 179 (quoting *Burlington N. & Santa Fe Ry. Co.* v. *White*, 548 U.S. 53, 68 (2006)). "[T]he alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently substantial in gross as to be actionable." *Hicks*, 593 F.3d at 165 (internal quotation marks omitted). The Second Circuit has called these "retaliatory hostile work environment" claims." *Carr*, 76 F.4th at 180 ("A claim of 'retaliatory hostile work environment' must therefore be treated identically to a claim that an employer took multiple retaliatory actions that were, in the aggregate, 'materially adverse.'").

Plaintiff adequately alleges an adverse employment action under the *Carr* framework. Plaintiff alleges that, after she filed a formal written complaint about Defendant Beebe's conduct on August 8, 2023, Defendant Rivera "told

[Plaintiff]'s co-workers not to trust her"; "would physically obstruct [Plaintiff's] pathway in order to intimidate her"; "took [Plaintiff's] timecards off the rack and told [Plaintiff's] supervisors, falsely, that she was stealing time"; "began asking male officers if [Plaintiff] had sexual intercourse with them"; and called Plaintiff "a 'rat' and a 'snitch.'" (Compl. ¶¶ 40-46). Additionally, one of Plaintiff's co-workers placed on Plaintiff's time sheet a sticker depicting a cartoon rat with Plaintiff's surname on its chest. (*Id.* ¶ 47; *id.*, Ex. F). These are more than "trivial harms," or "those petty slights or minor annoyances that often take place at work and that all employees experience," which courts find not to be materially adverse. *Shultz*, 867 F.3d at 309 (quoting *Tepperwien* v. *Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 570 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Burlington*, 548 U.S. at 68)). Rather, as in *Stevenson* v. *New York State Department of Corrections and Community Supervision*, in the context of the dangerous environment of a correctional facility such as Edgecombe, accusing Plaintiff of being a "rat" or "untrustworthy" — and encouraging others to follow suit — are materially adverse actions. No. 21 Civ. 355 (GWC), 2022 WL 179768, at *8 (W.D.N.Y. Jan. 20, 2022).[4] Viewed in context, and in the aggregate, allegations that Rivera actively fomented distrust of Plaintiff by labeling her a "rat" and falsely

---

[4]      In fact, in *Carr*, the Second Circuit favorably compared *Stevenson*'s analysis of a "retaliatory hostile work environment" as an "*alternative* way to establish" the adverse employment action element of a retaliation claim with cases where courts improperly analyzed "retaliatory hostile work environment" claims under the stricter hostile work environment standard. *Carr* v. *N.Y.C. Transit Auth.*, 76 F.4th 172, 181 n.4 (2d Cir. 2023) (quoting *Stevenson* v. *N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 21 Civ. 355 (GWC), 2022 WL 179768, at *6 (W.D.N.Y. Jan. 20, 2022)).

accusing her of stealing time, in combination with allegations that Rivera physically intimidated Plaintiff, are sufficient to allege materially adverse retaliatory actions that would dissuade a reasonable worker from making or supporting a charge of discrimination.  *Carr*, 76 F.4th at 179.

The context of Plaintiff's dangerous work environment and the degree of Rivera's fomentation of distrust distinguish this case from *Schultz*, where the Second Circuit found no materially adverse action because the plaintiff had alleged "mere[ ] … negative comments" that the plaintiff had overheard; that the defendants had "encouraged employees not to speak with her after her last day at work"; and that the defendants "distributed a negative statement about her after the lawsuit was commenced."  867 F.3d at 309-10.  Here, by contrast, Plaintiff alleges that Defendant Rivera engaged in "more direct hostile conduct" toward her.  *Carr*, 76 F.4th at 180.  Unlike in *Schultz*, where the defendants' alleged conduct merely created an air of negativity surrounding the plaintiff, Rivera's alleged conduct directly targeted Plaintiff and placed her in the crosshairs of her co-workers, who followed Rivera's lead by (literally) labeling Plaintiff a "rat."  Viewed together, and in the light most favorable to Plaintiff, these allegations suffice to plead adverse action.

As for the third element of a § 1983 retaliation claim at the pleading stage — causation — "a plaintiff must plausibly plead a connection between the act and [her] engagement in protected activity."  *Vega*, 801 F.3d at 90.  "A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action."  *Id.* (citing *Cifra* v. *Gen.*

18

*Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001)).  Furthermore, a plaintiff claiming

an adverse retaliatory action "must plausibly allege that the retaliation was a

'but-for' cause of the employer's adverse action."  *Id.*  In other words, a plaintiff

must plausibly allege that "the adverse action would not have occurred in the

absence of the retaliatory motive."  *Id.* at 91 (quoting *Zann Kwan* v. *Andalex*

*Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013)).  This does not, however, "alter the

plaintiff's ability to demonstrate causation … through temporal proximity."  *Id.*

(omission in original) (quoting *Zann Kwan*, 737 F.3d at 845).

Here — as Plaintiff points out — Defendants do not contest that the

internal complaint Plaintiff filed regarding Beebe's conduct constituted

protected activity, or that Plaintiff adequately pleads causation.  (Pl. Opp. 7

n.5).  The Court nevertheless finds that Plaintiff adequately pleads causation

based on the temporal proximity between her protected activity and Rivera's

materially adverse conduct.  On August 8, 2023, Plaintiff filed a formal internal

complaint about Beebe's conduct.  (Compl. ¶ 40; *id.*, Ex. E).  Filing a formal

complaint is considered a "protected activity."  *See, e.g.*, *Schaper* v. *Bronx Leb.*

*Hosp. Ctr.*, 408 F. Supp. 3d 379, 391 (S.D.N.Y. 2019) ("[F]or the purpose[ ] of

establishing a retaliation claim, the Second Circuit recognizes both formal and

informal complaints as protected activity[.]").  In close temporal proximity, the

"rat" sticker was placed on Plaintiff's time sheet dated November 2, 2023-

November 15, 2023.  (Compl. ¶ 47; *id.*, Ex. F).  Especially in light of the

allegation that the sticker was the result of Rivera's campaign of fomenting

distrust of Plaintiff, the three-month period between Plaintiff's filing of the

19

complaint and this retaliatory conduct is sufficiently close in time such that Plaintiff adequately alleges causation. *See, e.g.*, *Vega*, 801 F.3d at 92 (finding that the plaintiff plausibly alleged temporal proximity where the retaliatory conduct occurred two to three months after the protected activity). In sum, Plaintiff adequately alleges a § 1983 retaliation claim against Defendant Rivera.

### 2. Plaintiff Has Failed to Plead a Section 1983 Deliberate Indifference Claim as to Defendant Miller

Separately, Plaintiff alleges that Defendant Miller, in his role as Edgecombe's Superintendent, "exhibited a deliberate indifference toward [her] health, safety, welfare[,] and constitutional rights," because he "knew Defendant Beebe, Defendant Rivera[,] and potentially other employees were retaliating against Plaintiff[,]" and, "[n]otwithstanding this knowledge," Miller allowed this retaliation. (Compl. ¶¶ 67-69). Plaintiff appears only to bring this claim against Defendant Miller, and she brings it under § 1983. (*Id.* ¶¶ 66-70). However, Plaintiff's "deliberate indifference" claim against Miller fails at the pleading stage for two independent reasons: (i) "deliberate indifference" is not the applicable standard; and (ii) Plaintiff does not adequately allege Miller's personal involvement in the alleged deprivation of her rights.

"Deliberate indifference" is the standard for an Eighth Amendment claim, and that standard is inapplicable here. Plaintiff styles her claim as one of "deliberate indifference" to her "health, safety, welfare[,] and constitutional rights." (Compl. ¶ 69). In response, Miller treats Plaintiff's claim as one for deliberate indifference under the Eighth Amendment. Broadly speaking, post-conviction prisoners may state a claim under the Eighth Amendment for

deliberate indifference to unlawful conditions of confinement by alleging that the defendant knew of, and disregarded, "an excessive risk to inmate health or safety; the [defendant] must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the defendant] must also [have] draw[n] the inference." *Vega* v. *Semple*, 963 F.3d 259, 273 (2d Cir. 2020) (quoting *Farmer* v. *Brennan*, 511 U.S. 825, 837 (1994)).  Miller maintains that "[n]othing Plaintiff pleads shows that Superintendent Miller had any subjective knowledge of substantial risk of serious harm to Plaintiff and disregarded it" (Rivera & Miller Br. 7), indicating that he construes Plaintiff's claim to be one under the Eighth Amendment.  But Plaintiff is not a post-conviction prisoner, and therefore the Eighth Amendment standard is inapplicable.  The Court instead charitably construes Plaintiff's "deliberate indifference" claim to be a § 1983 retaliation claim against Miller in his capacity as a supervisor.

Plaintiff fails to allege § 1983 retaliation (or any other constitutional claim) against Defendant Miller because she does not plausibly allege Miller's personal involvement in any deprivation of her rights.  "In the Second Circuit, 'there is no special rule for supervisory liability' under Section 1983." *Brown* v. *County of Westchester*, No. 22 Civ. 6146 (PMH), 2024 WL 21937, at *9 (S.D.N.Y. Jan. 2, 2024) (quoting *Tangreti* v. *Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020)).  As previously discussed, "[a]n individual can be held liable under § 1983 'only if they are personally involved in the alleged deprivation.'" *Miller-Sethi*, 2023 WL 419277, at *9 (quoting *Littlejohn*, 795 F.3d at 314).

21

Consequently, "a plaintiff must plead that each [g]overnment-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti*, 983 F.3d at 616 (quoting *Iqbal*, 556 U.S. at 676). But Plaintiff alleges only that Miller — the Correctional Facility Superintendent and highest-ranking correction officer at Edgecombe (Compl. ¶ 10) — "knew" that Defendants Beebe and Rivera (and potentially others) were retaliating against Plaintiff, and nevertheless "allowed" this to happen (*id.* ¶¶ 67-68; *see also id.* ¶¶ 48-56).

The only specific allegations of Defendant Miller's personal involvement are that Miller "refused to accept any of [Plaintiff's] verbal complaints" because he could not "do anything unless it[ was] in writing" (*id.* ¶ 50), and that Miller told Plaintiff, "[i]f you want to fit in here, you need to be quiet" (*id.* ¶ 49). Neither allegation personally implicates Miller in unconstitutional conduct. That Miller told Plaintiff that he required a written complaint to take action is a far cry from personal involvement in a retaliatory hostile work environment. Rather, this appears to be a straightforward statement of DOCCS policy. And to the extent Miller's failure to respond amounts to "tacit[ ] or express[ ] approv[al] or ratif[ication] [of] the [c]onstitutionally violative behavior," his "mere receipt of a … grievance, coupled with the failure to act, is not enough to sufficiently plead personal involvement." *Ndemenoh* v. *Boudreau*, No. 20 Civ. 4492 (RA), 2023 WL 6122852, at *6 (S.D.N.Y. Sept. 19, 2023) (internal quotation marks omitted). Furthermore, Miller's alleged statement that Plaintiff needed to be "quiet" to "fit in" at Edgecombe is at most indicative of his

22

tacit or express approval of the constitutionally violative behavior, *see id.*, and essentially amounts to a "vague" allegation that Miller "aided and abetted unlawful conduct," which, "'without more, [is] insufficient to allege … personal involvement under [S]ection 1983,'" *Brown*, 2024 WL 21937, at *9 (second alteration in original) (quoting *Fellah* v. *City Univ. of N.Y.*, No. 20 Civ. 6423 (JPC), 2022 WL 4619902, at *6 (S.D.N.Y. Sept. 30, 2022) (collecting cases)). Accordingly, the Court dismisses Plaintiff's "deliberate indifference" claim against Defendant Miller.

### 3. Defendant Beebe Does Not Have Immunity from Suit Under New York Corrections Law Section 24

Before addressing the merits of Plaintiff's claims against Defendant Beebe under New York law, the Court considers whether — as Defendant Beebe argues (Beebe Br. 3-5) — he is immune from these claims under New York Corrections Law § 24 ("Section 24").  The Court finds that he is not.

Section 24 provides in relevant part that:

> No civil action shall be brought in any court of the state … against any officer or employee of the department [(DOCCS)] … in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

N.Y. Corr. Law § 24(1).  Although it refers to civil actions brought in "any court of the state," Section 24 has been interpreted to preclude the assertion of such claims in federal court, too.  *Bernardi* v. *N.Y. State Dep't of Corr.*, No. 19 Civ. 11867 (KMK), 2021 WL 1999159, at *5 (S.D.N.Y. May 19, 2021) (citing *Baker* v. *Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996)).  "The immunity shields employees

from personal liability [for] any state law[5] claim for damages related to actions falling within the scope of their employment." *Id.* (citing *Ierardi* v. *Sisco*, 119 F.3d 183, 186 (2d Cir. 1997)). "In determining whether Section 24 applies, courts look to the factors associated with New York's scope of employment analysis." *Mrani* v. *N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 21 Civ. 1072 (NSR) (AEK), 2023 WL 3736781, at *4 (S.D.N.Y. May 31, 2023) (citing *Ierardi*, 119 F.3d at 187-88 & n.3 (citing *Riviello* v. *Waldron*, 47 N.Y.2d 297, 302 (1979))). These factors include:

> the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; whether the act is one commonly done by [such an] employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated.

*Ierardi*, 119 F.3d at 187-88 (quoting *Riviello*, 47 N.Y.2d at 303). Although "both New York and federal courts have on occasion found that the on-the-job conduct of [DOCCS] employees was outside the scope of employment, such holdings generally have been limited to cases in which the conduct 'was prompted purely by personal reasons unrelated to the employer's interest,' or 'indicate[d] an intentional course of conduct contrary to institutional rules,

---

[5]    The Court interprets the scope of Section 24's immunity, which covers state law, to reach local law (such as the NYCHRL) too. *See, e.g.*, *Yost* v. *Everyrealm, Inc.*, 657 F. Supp. 3d 563, 578 n.10 (S.D.N.Y. 2023) (interpreting the term "State law" in a federal statute to "encompass local (for example, municipal) laws … such as the NYCHRL" in part because municipalities are political subdivisions of states (citing *United Bldg. & Constr. Trades Council of Camden Cnty. & Vicinity* v. *Mayor & Council of City of Camden*, 465 U.S. 208, 215 (1984) (finding that a local ordinance must comport with the Privileges and Immunities Clause because "a municipality is merely a political subdivision of the State from which its authority derives"))).

training and common sense.'" *Degrafinreid* v. *Ricks*, 452 F. Supp. 2d 328, 334
(S.D.N.Y. 2006) (second alteration in original) (internal citation omitted) (first
quoting *Ierardi*, 119 F.3d at 188, then quoting *Spitz* v. *Coughlin*, 557 N.Y.S.2d
647, 648 (3d Dep't 1990)).

Defendant Beebe argues that Section 24 immunity applies because — in
essence — Plaintiff said so.  (Beebe Br. 4-5).  The Court disagrees.  It is true
that Plaintiff alleges in the Complaint that "[e]ach and all of the acts of the
Defendants alleged herein were done while acting within the scope of their
employment by [DOCCS]."  (Compl. ¶ 13a).  According to Defendant Beebe,
Plaintiff is bound by this allegation, and, in fact, Defendant Beebe maintains
that he "would not be arguing for the dismissal of Plaintiff's state law claims in
this action based upon Section 24 immunity" had Plaintiff not specifically
alleged that Beebe was acting within the scope of his employment.  (Beebe
Br. 4-5).  Indeed, Defendant Beebe acknowledges that "many courts have
declined to extend Section 24 immunity to sexual harassment claims" such as
Plaintiff's.  (*Id.* at 4 (citing *Martin* v. *N.Y. State Dep't of Corr. Servs.*, 224 F.
Supp. 2d 434 (N.D.N.Y. 2002)).  However, the scope of Section 24 immunity is a
legal question, and the Court considers Plaintiff's allegation that Defendants
acted "within the scope of their employment" (Compl. ¶ 13a) to be a "legal
conclusion[ ] masquerading as [a] factual conclusion[ ]," which the Court need
not accept as true at the pleadings stage, *Rolon*, 517 F.3d at 149.  Moreover,
statutory immunity is a matter of subject matter jurisdiction, *Makarova*, 201
F.3d at 113, and the Court "has an independent obligation to assure itself of its

subject matter jurisdiction," *Buhannic* v. *TradingScreen Inc.*, No. 19 Civ. 10650 (ER), 2020 WL 4058949, at *6 (S.D.N.Y. July 20, 2020) (citing *Bayerische Landesbank, N.Y. Branch* v. *Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 48 (2d Cir. 2012)). Accordingly, the Court cannot and does not construe Plaintiff's allegation that Defendants were acting within the scope of their employment to mean that they, in fact, were.[6]

Instead, the Court finds as a matter of law that Defendant Beebe was *not* acting within the scope of his employment during the course of his alleged misconduct. As Defendant Beebe himself acknowledges (Beebe Br. 4), "[c]ourts that have considered the issue have held that personal harassment unrelated to an employee's assigned duties does not entitle a corrections department employee to Section 24 immunity," *Bernardi*, 2021 WL 1999159, at *6 (citing *Martin*, 224 F. Supp. 2d at 440-42; *Ierardi*, 119 F.3d at 188). Indeed, Defendant Beebe concedes that Section 24 immunity does not apply to his conduct. (Beebe Br. 4-5). For the avoidance of doubt, the Court finds that Beebe's alleged conduct falls outside the scope of Section 24. This conduct, including, *inter alia*, sending inappropriate messages to Plaintiff on Instagram and via text (Compl. ¶¶ 13-18, 28); physically assaulting Plaintiff (*id.* ¶¶ 24-26,

---

[6]     Having determined that whether Defendant Beebe was acting within the scope of his employment for Section 24 immunity purposes is a question for the Court to decide as a matter of law, the Court need not address Plaintiff's alternative argument that she did not allege that Beebe's acts were "'within the scope of [his] employment' *and* 'in the discharge of [his] duties.'" (Pl. Opp. 9 (quoting N.Y. Corr. Law § 24(1))). There is no support in the case law for the notion that these two clauses refer to two independent requirements and, moreover, the Section 24 immunity question remains one for the Court to decide as a matter of law in the first instance.

37-39); and implicitly offering a *quid pro quo* of time off for sexual favors (*id.* ¶¶ 33-34), plainly cannot be "act[s] within the scope of [Beebe's] employment and in the discharge of [his] duties," N.Y. Corr. Law § 24(1).  "None of these comments related to [his] job functions.  As a result, [Defendant Beebe] is not entitled to Section 24 immunity for his alleged discriminatory comments." *Bernardi*, 2021 WL 1999159, at *6; *see also Ierardi*, 119 F.3d at 189 (finding that similar conduct, "although occurring during the course of [an officer's] employment," was "beyond the ambit of protection provided to correction officers under Section 24").

### 4. Plaintiff Has Adequately Pleaded Certain of Her Gender Discrimination and Harassment Claims Under State and Local Law Against Defendant Beebe

#### a. The Court Dismisses Plaintiff's Gender Discrimination and Harassment Claims Under the NYSHRL Against Defendant Beebe

Having decided that Section 24 immunity cannot shield Defendant Beebe from liability for his alleged misconduct, the Court turns to whether Plaintiff plausibly alleges claims against him under New York state anti-discrimination law.  The Court begins with Plaintiff's NYSHRL gender discrimination and harassment claim against Beebe.  (Count V).  Beebe argues that this claim must be dismissed because he cannot be considered Plaintiff's "employer," and because liability under the NYSHRL only extends to "employers."  (Beebe Br. 6). The Court agrees.

The NYSHRL provides that "[i]t shall be an unlawful discriminatory practice … *[f]or an employer* … because of an individual's … gender identity or

expression … [or] sex … to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a) (emphasis added). The Court of Appeals has held that the NYSHRL "does not render employees liable as individual employers." *Doe* v. *Bloomberg, L.P.*, 36 N.Y.3d 450, 458 (2021). In *Doe*, the Court of Appeals characterized the definition of "employer" under the NYSHRL as "narrow," and it specifically held that, under the NYSHRL, "a corporate employee simply does not qualify as an 'employer,' *regardless of the employee's position or relationship to the employer.*" *Id.* (emphasis added). The Court concurs with other courts in this Circuit that have applied the logic of *Doe* to public employers — including DOCCS — and found that individual employees are not "employers" for NYSHRL purposes. *See Belyea* v. *City of Glen Cove*, No. 20 Civ. 5675 (MKB), 2023 WL 1929787, at *2-3 (E.D.N.Y. Feb. 10, 2023) (finding that mayor was employee of city and therefore could not be liable as an employer under the NYSHRL (citing *Stevenson*, 2022 WL 179768, at *21 (finding that DOCCS supervisor could not be liable as an employer)); *Bonaffini* v. *City Univ. of N.Y.*, No. 20 Civ. 5118 (BMC), 2021 WL 2895688, at *2 (E.D.N.Y. July 9, 2021) (finding that college provost could not be liable as an employer))); *see also Okafor* v. *N.Y. State Ins. Fund*, No. 24 Civ. 5680 (JGK), 2025 WL 2299172, at *12 (S.D.N.Y. Aug. 8, 2025) ("The [primary NYSHRL] theory of liability is not viable in this case because, as the parties agree, the individual defendants are not 'employers' under the statute."). Defendant Beebe is an individual employee of DOCCS,

and not Plaintiff's employer.  Therefore, he cannot be held liable for gender discrimination under the NYSHRL.  The Court dismisses Plaintiff's NYSHRL claim against Beebe for this reason.

In her opposition brief, Plaintiff maintains that her NYSHRL claim against Defendant Beebe should not be dismissed because an individual employee like Beebe can be liable for aiding or abetting an unlawful discriminatory practice under the statute.  (Pl. Opp. 10 (citing N.Y. Exec. Law § 296(6))).  The NYSHRL prohibits "'aiding, abetting, inciting, compel[ling] or coerc[ing] the doing' of any unlawful acts of discrimination under" the statute. *McHenry* v. *Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020) (alterations adopted) (quoting N.Y. Exec. Law § 296(6)).  The NYSHRL allows individual employees to be held liable for aiding and abetting a liable employer. *Nezaj* v. *PS450 Bar & Rest.*, 719 F. Supp. 3d 318, 329-30 (S.D.N.Y. 2024) (citing *Baptiste* v. *City Univ. of N.Y.*, 680 F. Supp. 3d 415, 427 (S.D.N.Y. 2023)).  However — as Beebe points out — Plaintiff does not allege that Beebe aided and abetted a NYSHRL allegation.  (Beebe Reply 6; *cf.* Compl. ¶¶ 79-83).  "[A]iding and abetting liability requires that the aider and abettor share the intent or purpose of the principal actor." *McHenry*, 510 F. Supp. 3d at 68 (internal quotation marks omitted).  More fundamentally, "liability must first be established as to the employer/principal before accessorial liability can be found as to an alleged aider and abettor." *DeWitt* v. *Lieberman*, 48 F. Supp. 2d 280, 293 (S.D.N.Y. 1999).  In other words, a plaintiff must allege that there was

a principal actor — an employer — whose unlawful discriminatory conduct the alleged aider and abettor was aiding and abetting.

Here, Plaintiff does not bring a NYSHRL claim of aiding and abetting against Defendant Beebe.  (*Cf.* Compl. ¶¶ 79-83).  Accordingly, the Court cannot and does not read such a claim into the Complaint.  *See, e.g.*, *Budhani* v. *Monster Energy Co.*, No. 20 Civ. 1409 (LJL), 2021 WL 5761902, at *3 (S.D.N.Y. Dec. 3, 2021) ("[I]t is axiomatic that the [c]omplaint cannot be amended by the briefs in opposition to a motion to dismiss." (alteration in original) (quoting *O'Brien* v. *Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989))).  Moreover, even if Plaintiff had specifically alleged aiding and abetting by Beebe, because she does not assert an NYSHRL discrimination claim against her employer (DOCCS), any aiding and abetting claim against Beebe would necessarily fail.  *See, e.g.*, *Marshall* v. *Westchester Med. Ctr. Health Network*, No. 22 Civ. 7990 (NSR), 2024 WL 665200, at *15 (S.D.N.Y. Feb. 16, 2024) ("As Plaintiff has fail[ed] to assert NYSHRL retaliation and discrimination claims against [her employer], her aiding and abetting claim against [two other employees] must also fail.").

> **b.** **The Court Sustains Plaintiff's Gender Discrimination and Harassment Claims Under the NYCHRL Against Defendant Beebe**

Although Defendant Beebe seeks dismissal of Plaintiff's NYCHRL gender discrimination and harassment claim (Count IV) on Section 24 immunity grounds (*see* Beebe Br. 3-5 (arguing that all of Plaintiff's New York state and local law claims against Beebe should be dismissed pursuant to Section 24);

Beebe Reply 3-5 (same)), he does not address whether the factual allegations in the Complaint adequately allege an NYCHRL gender discrimination and harassment claim against him. And although Plaintiff maintains that the Complaint pleads a claim "for harassment against Beebe under the ... [NYCHRL]" (Pl. Opp. 1), apart from this — and a similar passing reference in the brief's conclusion (*id.* at 12) — she, too, does not explain why the allegations in the Complaint adequately allege such a claim against Beebe. It is therefore unclear whether Beebe in fact seeks to dismiss Plaintiff's NYCHRL gender discrimination claim against him for failure to state a claim upon which relief can be granted. To the extent Beebe does seek dismissal of Count IV on these grounds, the Court denies this motion because Plaintiff plausibly alleges gender discrimination and harassment on Beebe's part.

The NYCHRL makes it unlawful "[f]or an employer or an employee or agent thereof, because of the actual or perceived ... gender ... of any person ... [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment." N.Y.C. Admin. Code § 8-107(1)(a)(3). Unlike the NYSHRL, an individual employee can be held liable for his participation in discriminatory conduct under the NYCHRL. *See Nezaj*, 719 F. Supp. 3d at 330 (citing *Doe*, 36 N.Y.3d at 459). To state a discrimination claim under the NYCHRL, a plaintiff need not allege that she suffered an adverse employment action or that "discriminatory animus was the but-for cause or even the primary motivation of their alleged mistreatment." *Delo* v. *Paul Taylor Dance Found., Inc.*, 685 F. Supp. 3d 173, 183 (S.D.N.Y. 2023). Rather, she must

allege only that she has been "treated less well at least in part because of [her] gender." *Id.* (quoting *Mihalik* v. *Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)).

In doing so, a plaintiff must still allege "differential treatment that is 'more than trivial, insubstantial, or petty.'" *Torre* v. *Charter Commc'ns, Inc.*, 493 F. Supp. 3d 276, 285 (S.D.N.Y. 2020) (quoting *Gorman* v. *Covidien, LLC*, 146 F. Supp. 3d 509, 530 (S.D.N.Y. 2015)). "That is, … 'a plaintiff must only show differential treatment of any degree based on a discriminatory motive[.]'" *Nezaj*, 719 F. Supp. 3d at 330 (quoting *Gorokhovsky* v. *N.Y.C. Hous. Auth.*, 552 F. App'x 100, 102 (2d Cir. 2014) (summary order)). "[T]he NYCHRL thus does not require a connection between the discriminatory conduct and a materially adverse employment action." *Id.* at 330-31 (internal quotation marks omitted). Even a "single comment that objectifies women … made in circumstances where that comment would, for example, signal views about the role of women in the workplace [can] be actionable." *Williams* v. *N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 41 n.30 (1st Dep't 2009); *see also Mihalik*, 715 F.3d at 114 ("*Williams* made clear … that … [the defendant's] alleged mistreatment of [the plaintiff] would be actionable under the NYCHRL *even if it was unrelated to her discharge* and was neither severe nor pervasive." (emphasis added) (footnote omitted) (internal citation omitted)). "While the NYCHRL is 'not a general civility code,' it should be construed 'broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible[.]'" *Delo*, 685 F. Supp. 3d at 183 (quoting *Mihalik*, 715 F.3d at 109, 113).

32

Here, Plaintiff adequately alleges gender discrimination under the NYCHRL by Defendant Beebe.  She alleges multiple "comment[s] that objectif[y] women … made in circumstances where that comment would … signal views about the role of women in the workplace."  *Williams*, 872 N.Y.S.2d at 41 n.30.  To take just two examples, Plaintiff alleges that Beebe implied a "*quid pro quo* situation where [Plaintiff] would receive [her] requested day off in exchange for sexual favors" (Compl. ¶ 33), and that Beebe made lewd sexual comments regarding Plaintiff even after she refused his advances (*id.* ¶¶ 13-18).  Plaintiff adequately alleges that Beebe treated her "less well at least in part because of [her] gender," *Delo*, 685 F. Supp. 3d at 183, and therefore the Court denies any motion to dismiss her claim of gender discrimination and harassment under the NYCHRL as to Beebe.

**5.    Plaintiff Has Adequately Pleaded Claims for Retaliation Under the NYSHRL Against Defendant Rivera, But Has Abandoned Her Retaliation Claims Under the NYSHRL or the NYCHRL Against Defendant Beebe**

Both Defendant Rivera and Defendant Beebe seek to dismiss Plaintiff's claims of retaliation against them under the NYSHRL (Count VII).  (Rivera & Miller Br. 11-12; Beebe Br. 6-8).  The NYSHRL makes it "an unlawful discriminatory practice for any person … to retaliate … against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article."  N.Y. Exec. Law § 296(7).  The Court concludes that Plaintiff adequately alleges retaliation under the NYSHRL against Rivera, but that

Plaintiff has abandoned her NYSHRL retaliation claim (and, for that matter, her NYCHRL retaliation claim) against Beebe.

Plaintiff argues that her NYSHRL retaliation claim should not be dismissed because retaliation claims under § 1983 and the NYSHRL are subject to the same standard. (Pl. Opp. 5-6 (citing *Kirkland-Hudson* v. *Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 459 (S.D.N.Y. 2023))). However, that is not quite true for the conduct at issue here. The NYSHRL was amended in 2019 to provide that its provisions "shall be construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed." N.Y. Exec. Law § 300. This amendment "appl[ies] to claims that accrue on or after the effective date of October 11, 2019." *Wellner* v. *Montefiore Med. Ctr.*, No. 17 Civ. 3479 (KPF), 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019). "[A] cause of action for discrimination under the NYSHRL accrues … on the date of the alleged discriminatory act." *Fair Hous. Just. Ctr., Inc.* v. *JDS Dev. LLC*, 443 F. Supp. 3d 494, 504 (S.D.N.Y. 2020) (internal quotation marks omitted and alteration adopted). As the alleged conduct here occurred in 2023 (*see generally* Compl.), the post-2019 amendment NYSHRL standard applies to it.

Regardless of the precise effect of the 2019 amendment on the NYSHRL's retaliation standard, it is more liberal than the federal § 1983 retaliation standard, and therefore Plaintiff adequately alleges retaliation under the NYSHRL on the part of Defendant Rivera. "The case law … has yet to

definitively resolve whether the NYSHRL's liability standard is now coextensive with that of the [more liberal] NYCHRL, or whether it requires more, so as to impose a standard between federal and city law." *Wheeler* v. *Praxair Surface Techs., Inc.*, 694 F. Supp. 3d 432, 451 (S.D.N.Y. 2023); *see also Nezaj*, 719 F. Supp. 3d at 335 n.3. This Court has previously assumed, for purposes of a Rule 12(b)(6) motion, that the amended NYSHRL standard aligns with that of the NYCHRL. *See, e.g.*, *Kulick* v. *Gordon Prop. Grp., LLC*, No. 23 Civ. 9928 (KPF), 2025 WL 448333, at *8 (S.D.N.Y. Feb. 7, 2025); *Wright* v. *City of New York*, No. 23 Civ. 3149 (KPF), 2024 WL 3952722, at *6 (S.D.N.Y. Aug. 27, 2024). It does so here as well. Retaliation claims under the NYCHRL (and, for purposes of this motion, the NYSHRL) are subject to a broader standard than under § 1983 or Title VII. *See McHenry*, 510 F. Supp. 3d at 67. Consequently, the Court concludes that because Plaintiff adequately alleges a § 1983 retaliation claim against Rivera, she adequately alleges a NYSHRL retaliation against Rivera, and thus the Court denies Rivera's motion to dismiss this claim.

As for Defendant Beebe, in his opening brief, he argues that Plaintiff's NYSHRL and NYCHRL retaliation claims against him should be dismissed because Plaintiff fails to allege Beebe's personal involvement in any retaliatory conduct. (Beebe Br. 6-7). Although Plaintiff in her opposition brief maintains that the Complaint adequately pleads claims of retaliation against *Defendant Rivera* under the NYSHRL (Pl. Opp. 1), Plaintiff does not address Defendant Beebe's motion to dismiss the NYSHRL or NYCHRL retaliation claims against

him.  As a result, Beebe argues that Plaintiff has abandoned her state-law retaliation claims against him.  (Beebe Reply 2).  The Court agrees.  Because Plaintiff failed to respond to arguments regarding Beebe's motion to dismiss the NYSHRL retaliation claim (Count VII) and the NYCHRL retaliation claim (Count VI) against him, the Court deems Plaintiff to have abandoned these claims and dismisses them with prejudice.  *See, e.g.*, *Verdi* v. *City of New York*, 306 F. Supp. 3d 532, 552 (S.D.N.Y. 2018) (dismissing claims with prejudice where plaintiff failed to address defendants' arguments in his opposition (citing *Brandon* v. *City of New York*, 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010) (collecting cases))); *Hauschild* v. *United States Marshals Serv.*, No. 21 Civ. 7580 (CS), 2023 WL 2413934, at *12 (S.D.N.Y. Mar. 8, 2023) (collecting cases), *aff'd*, No. 23-778-cv, 2024 WL 158899 (2d Cir. Jan. 12, 2024) (summary order).

### 6.    The Court Will Not Grant Leave to Amend

Plaintiff does not expressly seek leave to amend.  (*Cf.* Pl. Opp.).  However, Defendants Rivera and Miller argue that Plaintiff should not be granted leave to amend her Complaint because she was expressly permitted an opportunity to do so but did not.  (Rivera & Miller Br. 13-14).  It is true that the Court gave Plaintiff a deadline by which to amend her Complaint (*see* August 6, 2024 Minute Entry), and that Plaintiff chose not to amend.  (*See also* Dkt. #26 (October 2, 2024 letter in which Plaintiff stated that she did not amend her Complaint because, regardless of amendment, "defendants were still going to file their motions to dismiss")).  Accordingly, the Court declines to grant leave

to amend *sua sponte*.  *See Hauschild*, 2023 WL 2413934, at *12 (declining to grant leave to amend *sua sponte* and collecting cases).

## CONCLUSION

For the above reasons, the Court GRANTS IN PART and DENIES IN PART the partial motion to dismiss brought by Defendants Rivera and Miller, and GRANTS IN PART and DENIES IN PART the partial motion to dismiss brought by Defendant Beebe.  The Court's decision leaves the following claims against the following Defendants:

- As to Beebe: Count I (violation of the Fourteenth Amendment's Equal Protection Clause) and Count IV (NYCHRL gender discrimination and harassment); and

- As to Rivera: Count I (retaliation in violation of the Fourteenth Amendment's Equal Protection Clause); Count VI (NYCHRL retaliation); and Count VII (NYSHRL retaliation).

The remaining claims are dismissed with prejudice, and Miller is terminated as a Defendant in this case.

The Clerk of Court is directed to terminate the pending motions at docket entries 28 and 30.  The parties remaining in this litigation are hereby ORDERED to file a proposed case management plan on or before **September 2, 2025**.

SO ORDERED.

Dated:      August 19, 2025
            New York, New York

_____
            KATHERINE POLK FAILLA
            United States District Judge